AMBRO, Circuit Judge,
concurring in part.
I join wholeheartedly in Judge Garth’s excellent analysis affirming the District Court’s denial of summary judgment to the police officers. While I concur in the judgment as to the EMTs, I write separately to emphasize that, in light of the high threshold for subjecting EMTs to liability on a state action theory, the facts of this case would support liability for the EMTs under a very limited set of circumstances only. Before doing so, I consider the changes to the four-prong test applicable to state-created dangers, set out in Kneipp v. Tedder, 95 F.3d 1199 (3d Cir.1996).
I. The Kneipp test
The District Court relied on the Kneipp test in its analysis of state-created danger. In so doing, it cited principles that have since been refined, if not superseded altogether. The four elements we identified in Kneipp were: “(1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; [and] (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party’s crime to occur.” Id. at 1208 (citing Mark v. Borough of Hatboro, 51 F.3d 1137, 1152 (3d Cir.1995)).
Judge Garth has noted the most important of ■ the recent -modifications to the Kneipp test, which involved its second prong: in light of the Supreme Court’s decision in County of Sacramento v. Lewis, 523 U.S. 833, 845-47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), a state actor will be liable only for conduct that “shocks the conscience”; it is no longer enough that she or he has acted in “willful disregard” of the plaintiffs safety. Brown v. Pa. Dep’t of Health Emergency Med. Training Inst., 318 F.3d 473, 480 (3d Cir.2003).
This modification, however, is not the only one. In Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir.1997), we reconsidered the third prong of the Kneipp test and suggested that there may be a “relationship” between the state and the plaintiff merely because the plaintiff was a foreseeable victim, either individually or as a member of a discrete class. Id. at 914. Moreover, we have written “third party” out of the fourth prong of the test. We recently noted, “The fourth element’s reference to a ‘third party’s crime’ arises from the doctrine’s origin as an exception to the general rule that the state does not have a general affirmative obligation to protect its citizens from the violent acts of private individuals. The courts, however, have not limited the doctrine to cases where third parties caused the harm.... ” Estate of Smith v. Marasco, 318 F.3d 497, 506 (3d Cir.2003) (internal citation omitted).
In light of these substantial modifications to the Kneipp test, Kneipp as shorthand is a misnomer. To be sure, Judge Garth has mentioned the relevant refinements and considered this case by reference to the adapted rubric. I nonetheless *203 believe that continuing to cite the Kneipp test as “good law,” as Judge Garth does, minimizes the extent to which the law of state-created danger in our Circuit has changed. And while the changes to- the third and fourth prongs have expanded the state-created danger doctrine, the substitution of “shocks the conscience” for “willful disregard” is a significant limitation. In this context, our continued adherence to Kneipp, if only in name, colors plaintiffs’ perception of their burden and tempts them to allege constitutional violations where none exist.
II. Does the conduct of the EMTs shock the conscience?
I am persuaded by Judge Garth’s analysis that the plaintiffs have alleged sufficient facts for a jury to find that Garcia’s and Rodriguez’s conduct shocks the conscience. I stress, however, that only a very specific-and highly unlikely-factual resolution would warrant such a finding.
Whether defendants’ behavior is conscience-shocking depends on the particular circumstances of a case. Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir.1999). The Supreme Court has, however, provided guidance for application of the standard:
We have ... rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.... It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.
Lewis, 523 U.S. at 848-49, 118 S.Ct. 1708. From Lewis we have gleaned several lessons. “The first ... is that negligence is not enough to shock the conscience under any circumstances. The second is that more culpability is required to shock the conscience to the extent that state actors are required to act promptly and under pressure.” Schieber v. City of Philadelphia, 320 F.3d 409, 419 (3d Cir.2003). Moreover, when state actors must balance competing, legitimate interests, the threshold of culpability is higher. Id.
We have invoked these principles in setting the standard of culpability applicable to EMTs. In Brown, we considered a § 1983 claim against EMTs and the City of Philadelphia alleging violation of the due process rights of a child who died of choking following a botched rescue attempt. We emphasized that “there is no federal constitutional right to rescue services, competent or otherwise. Moreover, because the Due Process Clause does not require the State to provide rescue services, it follows that we cannot interpret that clause so as to place an affirmative obligation on the State to provide competent rescue services if it chooses to provide them.” Brown, 318 F.3d at 478.
Thus, in order to “shock the conscience,” rescue services must be more than incompetent. In fact, in light of our decision in Ziccardi v. City of Philadelphia, 288 F.3d 57 (3d Cir.2002), shocking the conscience entails more even “than subjective deliberate indifference,” id. at 65, the standard applied by the District Court in this case. Rather, plaintiffs must provide “proof of something less than knowledge that the harm was practically certain but more than knowledge that there was a substantial risk that the harm would occur.” Id. at 66. In other words, the plaintiffs here *204 must demonstrate that the EMTs “consciously disregarded, not just a substantial risk, but a great risk that serious harm would result” from their conduct. Id. (emphasis added).
On the facts of this case, I doubt very much that the plaintiffs will be able to demonstrate this added element of culpability. While the EMTs may have failed properly to assist Rivas, they certainly could not have expected, when they called for assistance in subduing a patient, that the police would subject the patient to physical abuse. Perhaps upon witnessing the subsequent mistreatment of their patient they should have intervened. Almost certainly they should have offered medical advice (e.g., a patient experiencing a seizure should not be touched). But it would be a harsh burden to require an EMT to insert herself into a struggle between a seizing patient and a violent police officer. It is after all a police officer, not an EMT, who is expected to carry out and enforce the law; an EMT will rarely feel qualified to second guess an officer’s authority.
I nonetheless concur because it is not now our role to interpret the facts. We will reverse the District Court’s denial of summary judgment only if there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). In assessing whether judgment as a matter of law is appropriate, we construe the facts in the light most favorable to the plaintiffs. We thus assume that the EMTs did not merely call the police unnecessarily because they misinterpreted Rivas’s symptoms as potentially aggressive or because they were needlessly afraid. Rather, we assume that they actually and actively misrepresented to the police that Rivas had attacked them. Though the chances are remote, a jury theoretically could find that the EMTs, unwilling to dirty their hands to assist their patient, called the police in order purposefully to shirk their responsibility. Alternatively, it is conceivable that Garcia and Rodriguez needlessly phoned for backup in a moment of fear and became embarrassed when they arrived; perhaps they chose to justify their call with false allegations of violence rather than admit their hastiness.
I am skeptical that the EMTs acted in this manner, but the conflicting testimony identified by Judge Garth potentially could support such an interpretation. I agree that such conduct, however unlikely, would satisfy the high standard of culpability laid out in Lewis and Brown. I therefore leave for the jury the question whether Garcia and Rodriguez consciously disregarded a great risk of serious harm to Rivas in a manner that “shocks the conscience.”